**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JONATHAN D. STRUM et al., *Plaintiffs*, v. IBRAHIM MARDAM-BEY et al., *Defendants*. | Civil Action No. 24-401 (TJK) |

**MEMORANDUM OPINION & ORDER**

As Jonathan Strum describes it, in May 2022, Ibrahim Mardam-Bey pitched him on investing in cryptocurrency markets because they were down at the time. Strum says that later that month, he transferred $50,000 to Mardam-Bey to invest in a cryptocurrency fund. But according to Strum, that money never reached the fund. Instead, Strum alleges that his money was used for World Cup tickets in Qatar for Mardam-Bey and his son, and a wedding at a five-star hotel in Bali for Mardam-Bey's daughter, among other things. Strum says Mardam-Bey eventually returned him only part of his investment.

Strum first sued Mardam-Bey and others in D.C. Superior Court, and the case was removed here. Then Strum amended his complaint to bring six state-law claims against Mardam-Bey and his company, Merchant Edge. In February 2025, the Court granted in part and denied in part Mardam-Bey and Merchant Edge's motion to dismiss, leaving most of Strum's claims alive. Before the Court now is Strum's Third Amended Complaint, in which he adds Mardam-Bey's wife as a defendant and two civil RICO counts. Defendants move to dismiss. For the reason explained below, the Court will, as before, grant the motion in part and deny it in part.

## I. Background

According to the Third Amended Complaint, as founder and Chief Executive Officer, Mardam-Bey "exercises total dominion and control over all the activity" of Merchant Edge LLC, an "international capital advisory firm." ECF No. 55 ¶¶ 4, 11–12. The Third Amended Complaint alleges that Mardam-Bey was also a director for "Alphemy Master Fund," a "cryptocurrency investment fund" that used "Alphemy US Fund I LP" ("AUSF") as a "feeder fund." *Id.* ¶ 8.

Starting in "mid-2020," Mardam-Bey and Merchant Edge allegedly "began to promote AUSF." ECF No. 55 ¶ 28. Strum was part of the audience for this initial promotional effort, as well as for later pitches from Mardam-Bey and Merchant Edge.[1] *See id.* ¶¶ 28–29. Strum alleges that in 2021 he received a "webinar and document package on a cryptocurrency" from Mardam-Bey and Merchant Edge. *Id.* ¶ 29. The promotions apparently worked. Strum says that he first tried to invest in AUSF in May 2021, but that transaction fell through. *Id.* ¶¶ 34–36.

So Mardam-Bey and Merchant Edge came up with a new transaction structure. Merchant Edge "would establish" a limited partnership called "LP1," and "LP1 would invest [in] AUSF." ECF No. 55 ¶ 39. According to Strum, "Mardam-Bey explicitly stated that this structure had been discussed and approved by Alphemy Capital . . . and MG Stover," who was "the administrator of AUSF." *Id.* ¶¶ 21, 40. And in May 2022, Mardam-Bey "frequently told Mr. Strum that the time was right for an investment in crypto as the markets were down" and that Strum "should act now to invest through the LP1 structure [Mardam-Bey] set up." *Id.* ¶ 42.

At the end of May 2022, Strum acted. He "caused the JDS Trust to transfer the $50,000 Strum Funds to the personal account of Mardam-Bey for the purpose of investing in AUSF through

[1] Strum sues individually and as trustee of the JDS SEP 2021 Trust, "a simplified employee pension" that he established "as a self-directed IRA." ECF No. 55 ¶ 2. For readability, and because nothing turns on this distinction, the Court refers only to "Strum."

the LP1entity." ECF No. 55 ¶ 43. But Strum then "continually sought documents and updates from Mardam-Bey and Merchant Edge as to the status of the investment in AUSF, but Mardam-Bey and Merchant Edge refused to provide them." *Id.* ¶ 44. And according to Strum, "Mardam-Bey and Merchant Edge never set up LP1 or any entity of any sort in which to invest in AUSF." *Id.* ¶ 45. Strum alleges that Mardam-Bey and Merchant Edge instead "converted the Strum Funds for their own purposes and to support Mr. Mardam-Bey's international lifestyle, including attendance with his son at the 2022 World Cup in Qatar, to fund household expenses," and "to fund a lavish wedding for their daughter Sara Mardam-Bey at the 5 Star Apurva Kempinksi Hotel on the island of Bali, Indonesia." *Id.* After repeated demands from Strum, Mardam-Bey allegedly returned only part of Strum's investment. *Id.* ¶¶ 53, 56.

In early 2024, Strum sued several parties in D.C. Superior Court, including Mardam-Bey and Merchant Edge. *See* ECF No. 1-1 at 3–4. Several defendants removed the case to federal court, invoking diversity jurisdiction. *See* ECF No. 1 at 1, 3–9. Strum dismissed the case against three defendants, leaving only Mardam-Bey and Merchant Capital. *See* ECF No. 18. He then filed his First Amended Complaint, which brought six state-law claims against those two: breach of contract (Count I); unjust enrichment (Count II); fraud (Count III); conspiracy to commit fraud (Count IV); intentional infliction of emotional distress (Count V); and conversion (Count VI). *See* ECF No. 19 ¶¶ 49–79. Mardam-Bey and Merchant Capital moved to dismiss, and the Court granted their motion as to Count IV (to the extent Strum alleged conspiracy liability as an independent tort) and Count V. *See* ECF No. 28 at 25.

Strum filed his Third Amended Complaint in November 2025. ECF No. 55. In it, Strum adds Mardam-Bey's wife, Randa Akeel, as a Defendant. *Id.* ¶ 5. Strum also adds two civil RICO

counts. *Id.* ¶¶ 71–85 (Counts V and VI).[2] In sum, then, Strum now brings four state-law claims and two federal-law claims: breach of contract (Count I); unjust enrichment (Count II); fraud (Count III); conversion (Count IV); civil RICO conspiracy under 18 U.S.C. § 1962(c) (Count V); and civil RICO conspiracy under 18 U.S.C. § 1962(d) (Count VI). ECF No. 55 ¶¶ 49–85 (Counts I–VI). Defendants—Mardam-Bey, Akeel, and Merchant Capital—now move to dismiss the Third Amended Complaint in its entirety for failure to state a claim, and also move to "strike Plaintiff's impermissible damages demands." ECF No. 59 at 2.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). At the motion to dismiss stage, the party moving for dismissal bears the burden of showing that no plausible claim for relief exists. *See Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 24 F. Supp. 3d 32, 48–49 n.10 (D.D.C. 2014); *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 48 (D.D.C. 2020).

[2] At points, the Third Amended Complaint duplicates paragraph numbers. So for the sake of clarity, where relevant, the Court will add a parenthetical indicating which count or section of the Third Amended Complaint the paragraph numbers correspond to.

## III. Analysis

Defendants move to dismiss the entire Third Amended Complaint for failure to state a claim and ask the Court to strike Plaintiff's damages demands in connection with several claims. The result is a mixed bag, but they mostly come up short. Still, the Court will dismiss Counts V and VI—civil RICO claims—against all Defendants and Counts I (breach of contract), III (fraud), and IV (conversion) against Akeel.

Before moving to its claim-by-claim analysis, though, the Court must address a threshold issue: the effect of the so-called "law-of-the case doctrine." In his opposition, Strum argues that Defendants' motion "is largely foreclosed by this Court's February 4, 2025 Memorandum Opinion." ECF No. 62 at 4. As he describes it, "[u]nder settled D.C. Circuit law, the Court should decline Defendants' invitation to re-litigate issues the court has already decided." *Id.* (citing *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).

"'Law-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). But the doctrine does not always apply. As one case cited by Strum explained, "the law-of-the-case doctrine does not apply to interlocutory orders . . . for they can always be reconsidered and modified by a district court prior to entry of a final judgment." *Keepseagle v. Perdue*, 856 F.3d 1039, 1048 (D.C. Cir. 2017) (cleaned up). And other circuits have held specifically that the doctrine does not apply when a plaintiff amends his complaint. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). When presented with a motion to dismiss an amended complaint, "the district court should simply . . . consider[] the amended complaint on its merits." *Id.*

For those reasons, the law-of-the-case doctrine does not apply here. The Court's February

2025 decision was a partial denial of a motion to dismiss, an interlocutory order that did not decide the entire case. And by filing an amended complaint, Strum "rendered [his] original complaint a nullity." *Wultz v. Islamic Republic of Iran*, No. 1:08-CV-1460 (RCL), 2009 WL 4981537, at *1 (D.D.C. Dec. 14, 2009). So the Court will "simply consider the amended complaint on its merits." *Askins*, 899 F.3d at 1043 (cleaned up).

### A. Breach of Contract (Count I)

To state a claim for breach of contract, Strum must allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *CorpCar Servs. Hou., Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1245 (D.C. 2024).[3] The "question of contract formation" is "objective" and requires "both agreement as to all material terms and intention of the parties to be bound." *Feld v. Fireman's Fund Ins. Co.*, 263 F. Supp. 3d 74, 78 (D.D.C. 2017) (cleaned up). Although "the terms of a signed written agreement" offer the "most clear[] evidence[]" of a "meeting of the minds," a "signed

[3] District of Columbia choice-of-law rules apply to all the state-law claims at issue here. *See Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997). For a tort claim like fraud, as well as for unjust enrichment claims, those rules call for "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014); *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 8 (D.D.C. 2016). The same analysis applies to contract claims where the contract does not specify which law governs the agreement. *See Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 864 (D.C. Cir. 2015). Applying those principles, D.C. law governs the state-law claims in the Third Amended Complaint. The parties do not argue that their contract specified the law to be applied to disputes arising out of the agreement. And under D.C.'s "modified interests analysis," the District of Columbia is the "jurisdiction with the most significant relationship to the dispute." *In re APA Assessment Fee Litig.*, 766 F.3d at 51. Strum lives here. ECF No. 55 ¶ 1. And he alleges that "Mardam-Bey and Merchant Edge solicited funds for AUSF from Jonathan Strum in Washington DC (and from others in the Washington DC area)"; that they "[s]ent documents for Mr. Strum in Washington DC to sign for the purpose of investment in Alphemy"; and that Strum was in the District when he "caused the JDS Trust to transfer the $50,000 Strum Funds to the personal account of Mardam-Bey." *Id.* ¶¶ 16, 22, 43. That Defendants are not citizens of the District of Columbia does not outweigh these other considerations.

writing is not essential to the formation of a contract." *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995). All that is required is "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Ascom Hasler Mailing Sys., Inc. v. USPS*, 885 F. Supp. 2d 156, 182 (D.D.C. 2012) (cleaned up).

Defendants argue that Count I should be dismissed as to Akeel because "Plaintiff does not allege that [she] entered into any written or oral contract with him, and he does not allege that [she] made any promises, accepted any duties, or agreed to any terms." ECF No. 59 at 9. Defendants are right. The Third Amended Complaint does not mention Akeel in Count I. *See* ECF No. 55 ¶¶ 49–56 (Count I). Nor does it allege elsewhere that she was a party to a contract, or that she breached a contractual duty. *See CorpCar Servs. Hou., Ltd.*, 325 A.3d at 1245. So Count I will be dismissed as to Akeel.

Defendants' other arguments directed at Count I fail. They argue that Strum fails to state a claim against Merchant Edge "because Plaintiff does not plead the essential elements of any enforceable agreement, including the specific obligations allegedly undertaken by Merchant Edge, the manner of the breach, or how Merchant Edge failed to perform." ECF No. 59 at 24. So too they argue, with respect to Mardam-Bey, that "Plaintiff does not allege the existence of an enforceable contract between Plaintiff and Mardam-Bey personally." ECF No. 59 at 17. Defendants add that the Third Amended Complaint "describe[s] an alleged investment arrangement involving Merchant Edge, LLC . . . and repeatedly characterize Merchant Edge—not Mardam-Bey individually—as the contracting party." *Id.*

Strum states a breach of contract claim against Merchant Edge and Mardam-Bey. Start with the existence of a contract. Strum alleges that "Mardam-Bey and Merchant-Edge agreed to accept $50,000 Strum Funds from Strum solely for the purpose of investing in AUSF through an

entity to be set up by defendants." ECF No. 55 ¶ 50. True, a corporate officer is not personally liable for the corporation's breach of contract. *Dean v. Walker*, 876 F. Supp. 2d 10, 13 (D.D.C. 2012) (summary judgment). But Strum alleges that Mardam-Bey *and* Merchant Edge agreed to contract, not just Merchant Edge. For now, that suffices.

The remaining elements are straightforward. Under the contract, Mardam-Bey and Merchant Edge allegedly had a duty to "invest[] in AUSF through an entity to be set up by [Mardam-Bey and Merchant Edge]." ECF No. 55 ¶ 50. Strum alleges that they "breach[ed] . . . that duty" by spending Strum's money "for their personal and/or business purposes," rather than investing it in AUSF. *Id.* ¶ 53; *CorpCar Servs. Hou., Ltd.*, 325 A.3d at 1245. And Strum has alleged "damages caused by the breach" in the form of financial loss and other injuries. *CorpCar Servs. Hou., Ltd.*, 325 A.3d at 1245; *see* ECF No. 55 ¶¶ 54–56. That is enough for "the court to draw the reasonable inference that the defendants"—Mardam-Bey and Merchant Edge—are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Defendants have not shouldered their burden of proving that no legally cognizable claim for relief exists. *See Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48.

Finally, Defendants argue that Strum's breach-of-contract damages allegations are "facially implausible." ECF No. 59 at 17. First, they contend that "[a] plaintiff cannot recover contract damages that exceed the alleged contract value without pleading facts to support such recovery, which Plaintiff does not do here." *Id.* at 18. But "the amount of damages Defendants owe is a fact question" and thus not appropriate to resolve on a motion to dismiss. *Elkins v. Dist. of Columbia*, 250 F.R.D. 20, 22 (D.D.C. 2008). Second, Defendants say that "[b]ecause Plaintiff's breach of contract claim does not support punitive damages as a matter of law, that demand must be dismissed or stricken." ECF No. 59 at 18. Not so. True, a plaintiff cannot recover punitive damages for breach of contract. *See Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 12

(D.D.C. 2007). But Strum does not appear to seek punitive damages in connection with that specific claim. *See* ECF No. 55 ¶¶ 49–56.

**B. Unjust Enrichment (Count II)**

Next up is unjust enrichment. A plaintiff states this claim "when (1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Armenian Assemb. of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 134 (D.D.C. 2009). It is true that Strum cannot recover for both breach of contract and unjust enrichment "pertaining to the subject matter of that contract." *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 250 (D.D.C. 2017). But at this stage, especially when it is unclear whether Strum will ultimately be able to prove that a contact existed, he "may pursue" unjust enrichment as an "alternative theory of liability." *Id.*

Strum names Akeel in Count II, but Defendants argue that he does not plausibly state a claim against her. *See* ECF No. 55 ¶ 57 (Count II); ECF No. 59 at 10–11. In particular, they say that Count II cannot survive against Akeel because Strum "does not allege that he transferred any funds to Akeel, that Akeel controlled the funds, or that Akeel personally received any identifiable benefit from Plaintiff." ECF No. 59 at 10–11. Defendants argue that "Plaintiff relies on vague, conclusory assertions that the funds 'may have' been used for household expenses or family events." *Id.* at 11. They also highlight "temporal gaps" that "defeat any plausible inference that Plaintiff's funds were used" for World Cup tickets or the luxury wedding, or even that "Akeel was unjustly enriched by" Strum's money. *Id.* In making these arguments, Defendants appear to contend that Strum fails to allege facts that support the first two elements of unjust enrichment.

The first element is somewhat flexible. "[A] benefit indirectly conferred on a defendant can support an unjust enrichment claim." *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 130 F. Supp. 3d 236, 256–57 (D.D.C. 2015) (collecting cases). So Defendants cannot meet

their burden by arguing that Strum "does not allege that he transferred any funds to Akeel." ECF No. 59 at 10; *see Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48. *Campbell* and similar cases make clear Strum does not have to allege as much to state a claim.

And Strum comfortably alleges the second element against Akeel. In unjust enrichment cases in which the "conferred . . . benefit" is money, the question is simple: has the defendant "returned" the money? *Marsden v. D.C.*, 142 A.3d 525, 527 (D.C. 2016). And Strum alleges that Defendants—Akeel included—have not returned his money and have instead "used" it to "maintain[] a lavish international lifestyle," and for other improper purposes. ECF No. 55 ¶¶ 53–58 (Counts I and II). Defendants misquote the Third Amended Complaint: it does not allege that "the funds 'may have' been used for household expenses or family events; it alleges that "such funds were used" for "paying personal expenses" and "hosting a lavish wedding for their daughter." *Id.* ¶ 57 (Count II). All told, Strum states a plausible unjust enrichment claim against Akeel.

Defendants do not move to dismiss the unjust enrichment claim against Mardam-Bey. *See* ECF No. 59 at 18–19. But they give it a shot for Merchant Edge, arguing that "the allegations do not plausibly establish that Merchant Edge unjustly retained any cognizable benefit" or even "actually received" a benefit. *See id.* at 25. They highlight that Strum alleges that "the funds at issue were transferred to Mardam-Bey's personal account, not to Merchant Edge." This argument fails for now-familiar reasons. It makes no difference that Strum's money was "transferred to Mardam-Bey's personal account" because a "benefit indirectly conferred on a defendant can support an unjust enrichment claim." ECF No. 59 at 12; *Campbell*, 130 F. Supp. 3d at 256–57. And "retain" is a similarly low bar that Strum clears for now. He alleges that Merchant Edge has not yet given him all his money back, and so he has plausibly alleged that Merchant Edge retained the benefit. ECF No. 55 ¶¶ 54–58 (Counts I and II).

As with breach of contract, Defendants also push back on Strum's damages demand. They argue that Strum's unjust enrichment damages demand is so high as to be "objectively unreasonable." ECF No. 59 at 25. It is too early for this argument. *See Elkins*, 250 F.R.D. at 22. Defendants also say that "[p]unitive damages are generally not recoverable for unjust enrichment as a matter of law and must be dismissed or stricken." ECF No. 59 at 26; *see id.* at 19. And they are correct that the general rule under D.C. law is that "[w]here the basis of a complaint" is breach of contract, "punitive damages will not lie." *Fireman's Fund*, 480 F. Supp. 2d at 12. But even if this rule extends to "quasi-contract" claims like unjust enrichment, it does not apply when the contract claim "merges with an independent, recognized tort, such as . . . fraud." *Id.* at 12–13; *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009). And Strum has alleged fraud "closely related" to the quasi-contract claim, so the Court will not strike his punitive damages claim at this early stage. *Allen v. Yates*, 870 A.2d 39, 48 (D.C.2005); *see* ECF No. 55 ¶ 64 (Count III).

**C. Fraud, Deceit, and Misrepresentation (Count III)**

To state a fraud claim under D.C. law, Strum must adequately allege five "essential elements": "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Atraqchi v. GUMC Unified Billings Servs.*, 788 A.2d 559, 563 (D.C. 2002). The third element—knowledge of falsity—"may be satisfied by showing that the statements were recklessly and positively made without knowledge of (their) truth." *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016). Plaintiffs alleging fraud must also satisfy Federal Rule of Civil Procedure 9(b), which requires that plaintiffs "plead with particularity" the "time . . . of the false representations, who precisely was involved in the fraudulent activity, the fact misrepresented, and facts that exemplify the purportedly fraudulent scheme." *McMullen*, 164 F. Supp. 3d at 95 (cleaned up). The particularity requirement, however, does not apply to allegations about the "conditions of a

person's mind" such as "malice, intent, [or] knowledge." *Id.* (cleaned up). A plaintiff may allege those facts "generally." *Id.*

Strum is unclear about whether Count III is alleged against Akeel. But if it is, it fails to state a claim against her. Defendants argue that the Third Amended Complaint "does not allege that Akeel made any statement to Plaintiff, communicated to Plaintiff in any manner, transmitted any writing, participated in any call, or made any representation concerning any investment or any use of funds." ECF No. 59 at 11. True. Strum does not mention Akeel in Count III, nor does he allege any "representation" from Akeel to Strum in connection with the cryptocurrency transaction. *Atraqchi*, 788 A.2d at 563. So he fails to state a claim against Akeel.

Defendants also argue that Strum fails to state a fraud claim against Mardam-Bey because of a "failure to plead the elements of fraud with the requisite particularity." ECF No. 59 at 19. They do not say which "elements" fall short of Rule 9(b), possibly because each element satisfies the particularity standard: Strum identifies the time of the false representations, ECF No. 55 ¶ 42; the parties involved in the false representation, *id.* ¶¶ 39, 42; and "facts that exemplify the purportedly fraudulent scheme," *id.* ¶¶ 37–39, 42, 45; *McMullen*, 164 F. Supp. 3d at 95 (cleaned up). All told, Sturm plausibly states a fraud claim against Mardam-Bey. He also states a fraud claim against Merchant Edge, and Defendants do not appear to argue otherwise. *See* ECF No. 59 at 19–20.

Once more, Defendants object to Strum's damages demand and argue that "Plaintiff's damages allegation should be substantially narrowed through dismissal or stricken." ECF No. 59 at 20. Once more, Defendants are wrong. Defendants state that Strum "seeks damages for emotional distress, physical injury, speculative lost investment opportunities, and punitive damages in extreme and unsupported amounts." *Id.* But Count III makes no mention of most of these. ECF No. 55 at ¶¶ 63–70. And punitive damages are available for fraud claims. *Fireman's Fund Ins. Co.*,

480 F. Supp. 2d at 12. Whether Strum's demand is "extreme" or "unsupported" is not fit for the Court to resolve now. ECF No. 59 at 20; *see Elkins*, 250 F.R.D. at 22.

**D. Conversion (Count IV)**

Strum's final common-law claim is for conversion. That claim has four elements: "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011). Money "can be the subject of a conversion claim"—but "only if the plaintiff has the right to a specific identifiable fund of money." *de Lupis v. Bonino*, 2010 WL 1328813, at *7 (D.D.C. Mar. 31, 2011) (quoting *Curaflex Health Servs., Inc. v. Bruni*, 877 F. Supp. 30, 32 (D.D.C. 1995)). And a plaintiff cannot prevail on a conversion claim that seeks only "to enforce a contractual obligation for payment of money." *Cuneo L. Grp. v. Joseph*, 669 F. Supp. 2d 99, 123 (D.D.C. 2009).

As to Akeel, Defendants argue that Strum "does not allege that Akeel ever possessed, received, held, controlled, or refused to return Plaintiff's funds." ECF No. 59 at 12. In other words, Defendants say that Strum fails to state a claim because he does not mention Akeel in connection to *any* element of the conversion tort. True again. Akeel is missing from Count IV, or in other parts of the Third Amended Complaint alleging facts relevant to conversion. In his opposition, Strum states that he intended to allege conversion as to Akeel too. *See* ECF No. 62 at 19–20. But that is too late. "It is a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief." *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014). And in any case, what Strum says in his opposition would not be enough to state a plausible claim against Akeel. He merely says that "with respect to

conversion, even when the initial possession is lawful, the once plaintiff makes a demand for the return of the converted goods and they are not returned it becomes conversion." ECF No. 62 at 20. Missing from this recitation of the legal standard is any allegation about Akeel's conduct, specifically.

Defendants argue that Strum's "conversion claim against Mardam-Bey is deficient and subject to dismissal for failure to plead a cognizable conversion claim." ECF No. 59 at 20. Deficient how? They do not say. So they have not met their burden to dismiss Count IV as to Mardam-Bey. They also move to dismiss Count IV as to Merchant Edge because, as they would have it, Strum fails to satisfy the second element of the conversion tort since "the Complaint does not allege that Merchant Edge received, held, or controlled the funds at issue." *Id.* at 26. But Strum alleges just that. He says his money went "to defendants"—i.e., both Mardam-Bey and Merchant Edge. ECF No. 55 ¶ 72 (Count IV). True, "Plaintiff alleges that the funds were transferred to Mardam-Bey's personal account," but Strum alleges that the transfer provided funds to both Mardam-Bey and Merchant Edge. ECF No. 59 at 26; *see* ECF No. 55 ¶ 72. All told, Strum states a plausible conversion claim against both Mardam-Bey and Merchant Edge.

Defendants end on Count IV as they do for Counts I, II, and III: by arguing about damages. They say that Strum's damage demand "fails as a matter of law" because he seeks "$100,000 in conversion damages despite alleging transfers totaling $50,000 and acknowledging that $30,000 was returned." ECF No. 59 at 25. But this is also premature. At the motion-to-dismiss stage, a plaintiff need only "adequately plead[] all the necessary elements," and has no obligation to "establish the amount of damages he allegedly suffered." *Smith*, 254 F. Supp. 3d at 252. Defendants also argue that Strum's punitive damages demand for conversion "be dismissed or stricken as a matter of law" because "[p]unitive damages for conversion are disfavored and require well-

pleaded facts showing malice, fraud, or oppression beyond a mere failure to return funds." ECF No. 59 at 21. The rub for Defendants is that Strum does provide well-pleaded facts—lots of them—"showing . . . fraud." *Smith*, 254 F. Supp. 3d at 252. So the Court will not strike Strum's damages demand for Count IV.

**E. RICO Under 18 U.S.C. § 1962(c) (Count V)**

Alongside his state-law claims, Strum also brings two federal RICO counts. One is Count V, based on 18 U.S.C. § 1962(c). Strum states explicitly that he brings Count V against Mardam-Bey and Merchant Edge. *See* ECF No. 54 at 15.

Section 1962(c) of the RICO Act provides that it shall be unlawful "for any person employed by or associated with" an enterprise "to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). Section 1962(c) extends to "any person employed by or associated with any enterprise engaged in" violations of the provision. 18 U.S.C. § 1962(c). For civil cases like this one, RICO allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to sue for treble damages. 18 U.S.C. § 1964(c).

RICO doctrine has several features that "help[] to prevent ordinary business disputes from becoming viable RICO claims." *W. Assocs.*, 235 F.3d at 637. One comes the "pattern requirement," which requires "relatedness and continuity." *Id.* at 633. "A 'pattern of racketeering activity' requires commission of at least two predicate offenses on a specified list," which includes wire fraud. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995). And a plaintiff must allege "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

229, 239 (1989). In determining whether a plaintiff has adequately pleaded continuity and relatedness, courts consider "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Edmondson & Gallagher*, 48 F.3d at 1265 (cleaned up).

RICO also comes with a heightened pleading requirement under certain circumstances. If the "racketeering activity" is mail fraud or wire fraud, a plaintiff must plead "circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)." *Watson v. Faris*, 139 F. Supp. 3d 456, 460–61 (D.D.C. 2015). Rule 9(b) generally requires that the pleader "state the time, place, and content of the false misrepresentations, and the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994). This pleading requirement applies to *each* of the "fraudulent acts that form the alleged pattern." *Watson*, 139 F. Supp. 3d at 461.

Defendants argue that Strum fails to plausibly allege "related predicate acts" that amount to a "pattern of racketeering activity." ECF No. 59 at 27. Strum purports to reference "multiple predicate acts of": "[w]ire fraud"; "[m]ail fraud"; "[m]oney laundering"; "[i]nterstate transportation of stolen property"; and "[p]ossibly investment fraud or unlicensed securities transactions in violation of federal securities laws." ECF No. 55 ¶ 75. And Strum produces a long list of "predicate acts." *Id.* ¶ 76. Many of these appear to be related to *this* transaction. *See id.* at (a)–(d). Others relate to unrelated alleged misdeeds such as "Devising and proposing a fraudulent invoice scheme" called "Project YS," "Signed Promissory Notes which were not repaid," and "Sending and Receiving funds via wire transfer." *Id.* at (e)–(g). He also alludes to legal proceedings against Mardam-Bey from the late 2010s that are referenced elsewhere in the complaint. *See id.* ¶ 78

("Newendrop and Smith"); *id.* ¶¶ 60–66 ("Pattern and Practice," "Other Acts/Attempts"). But this hodgepodge of examples is not enough to state a claim for a "pattern of racketeering activity." *W. Assocs.*, 235 F.3d at 633.

To see why, start with "Project YS." ECF No. 55 ¶¶ 62–66, 76 (Count V). In Strum's telling, Project YS—"a clearly illicit and illegal scheme which constitutes a predicate act under RICO"—was a proposal from Mardam-Bey to Strum to pay off a debt owed by Mardam-Bey to Strum's deceased mother. *Id.* ¶¶ 62–63. Allegedly, Mardam-Bey suggested "4 invoices" to "Cypriot SPV" for "$50k each every 30 days for 'services'" with the invoices "to be issued by a credible real company (Homeco) with bank account etc." *Id.* ¶ 64. "Homeco would then keep 50% on account for JDS, and transfer balance to IMB designated account." *Id.* Strum alleges that he "had no relationship with 'Homeco' and did not provide Homeco or Mardam-Bey with any services of any kind." *Id.* ¶ 66. But how is Project YS "clearly illicit and illegal?" *Id.* ¶ 62. Strum does not say. And if Strum means to imply that Project YS was wire fraud, the ambiguous description in the Third Amended Complaint does not "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). It is unclear, for example, whether Strum means to suggest that Mardam-Bey presented *him* with "false misrepresentations"—and what those false representations were—or whether, if consummated, this transaction would have involved presenting someone else (a bank? Cypriot SPV?) with "false misrepresentations" about Homeco. *Kowal*, 16 F.3d at 1278. All told, the elliptical Project YS email—and Strum's description of it—are not enough to plausibly state a claim for a predicate act of "racketeering." *See* ECF No. 47-13.

Next up is "Newendrop." ECF No. 55 ¶ 78. In Strum's telling, this references a Maryland state court case in which Mardam-Bey was sued by "Terry Newendorp," who is a "colleague" of Mardam-Bey. *Id.* ¶ 61. According to Strum, the lawsuit alleges that Newendorp sent Mardam-

Bey $100,000 via "wire transfers" so that Mardam-Bey could "borrow[]" the money, but Mardam-Bey never paid him back. *Id.* By emphasizing that Newendorp sent the money via "wire transfer," Strum appears to invite the Court to infer that this was "wire fraud" and thus a predicate RICO offense. *See id.*; 18 U.S.C. § 1961(1). But Rule 9(b) prevents the Court from doing so. Neither Strum nor the exhibits he submitted about Newendorp's case provide any insight into the "time, place, and content of the false misrepresentations, and the fact misrepresented" for any fraud in which Newendorp was victimized. *Kowal.*, 16 F.3d at 1278; *see* ECF Nos. 47-7, 47-8. Strum merely states that "Mardam-Bey borrowed $100,000 from his colleague Terry Newendorp . . . and failed to repay." ECF No. 55 ¶ 61. But "mere refusal to pay a debt is not a fraud." *McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 497 (3d Cir. 1943).

The same goes for *Smith v. Mardam-Bey*. *See* ECF No. 55 ¶ 61. According to Strum, *Smith* is a D.C. Superior Court case involving another failure to pay: "an agreement between the parties was reached on a Term Sheet for settlement" but "Mardam-Bey failed to make payment as agreed." *Id.* Whatever that means, it does not meet the Rule 9(b) standard. And while a Superior Court document submitted as an exhibit in this case by Strum details that Smith and another plaintiff sued Mardam-Bey and another defendant for "fraud" and "racketeering," Strum does not provide enough detail for the Court to know whether those claims survived or to evaluate whether they would have satisfied Rule 9(b). *See* ECF No. 47-9 at 1. The Third Amended Complaint instead focuses on Mardam-Bey's alleged failure to pay the settlement agreement—a failure to pay, which is "is not a fraud." *McClaskey*, 138 F.2d at 497; *see* ECF No. 55 ¶ 61 (Count II). The other exhibits submitted in connection with *Smith* likewise do not fill in the gaps between what Strum says in the Third Amended Complaint and what Rule 9(b) demands. *See* ECF Nos. 47-11, 47-12.

Strum also implies that the "pattern of racketeering activity" against him specifically went on from "2020-2025." ECF No. 55 ¶¶ 75, 78 (Count V). Another alleged predicate act is "Signed Promissory Notes which were not repaid, (and for which there was intention of repayment)." *Id.* ¶ 76. The Court assumes that this references Strum's allegation that "Mardam-Bey owed Jonathan Strum (and his now deceased mother) monies from previous transactions between Strum's mother and Mardam-Bey – including but not limited to, two promissory notes signed by Mardam-Bey and his wife Randa Akeel." ECF No. 55 ¶ 30. But once more, "mere refusal to pay a debt is not a fraud." *McClaskey*, 138 F.2d at 497. Strum also provides no factual allegations about the "[m]oney laundering" or "[i]nterstate transportation of stolen property" or "violation[s] of federal securities laws" that he alleges. ECF No. 55 ¶ 75. And regardless, Congress has amended the RICO statute so that securities fraud cannot be a predicate RICO offense. *See* 18 U.S.C. § 1964(c); *Tr. Agreement of Steven M. Sushner v. C.A. Harrison Cos., LLC*, No. 22-CV-2837 (CRC), 2023 WL 6313507, at *9 (D.D.C. Sept. 28, 2023).

That leaves just the alleged fraud here and in Project YS. But even if the Project YS allegations satisfied Rule 9(b)—which they do not—all Strum would have is two incidents involving him and Defendants. *See Watson*, 139 F. Supp. 3d at 461. And as the Supreme Court has commented in rejecting a RICO claim, "two of anything do not generally form a 'pattern.'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 n.14 (1985). That is especially true here where the "number of victims" and "number of perpetrators" is so low. *Edmondson & Gallagher*, 48 F.3d at 1265 (cleaned up).

In his opposition, Strum invokes a hypothetical from a Supreme Court RICO case. The hypothetical imagines a "hoodlum" who "sell[s] 'insurance' to the neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each

month to collect the 'premium' that would continue their 'coverage.'" *H.J. Inc.*, 492 U.S. at 242. The Supreme Court explained that "[t]hough the number of related predicates involved may be small," the hypothetical satisfies the "pattern" element because "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *Id.* But that hypothetical illustrates why Strum comes up short. Here, Strum has not pleaded "a specific threat of repetition." *Id*. And while the "hoodlum" has racketeered a neighborhood's worth of shopkeepers, Strum can only state a claim that Mardam-Bey had one racketeering victim: Strum. This is not enough to state a plausible RICO claim.

**F. RICO Under 18 U.S.C. § 1962(d) (Count VI)**

Strum pairs Count V with a civil RICO conspiracy claim in Count VI. He brings this count against Mardam-Bey, Akeel, and Merchant Edge. To state a RICO conspiracy under 18 U.S.C. § 1962(d), "the complaint must allege that (1) two or more people agreed to commit a subsection (c) offense, and (2) a defendant agreed to further that endeavor." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012).

Strum alleges that "[e]ach Defendant knowingly agreed to facilitate and benefit from the scheme(s)" and "committed or agreed to commit overt acts in furtherance of the conspiracy, and those acts caused injury to Plaintiff's property." ECF No. 55 ¶¶ 84–85. But because Strum has failed to plead a substantive RICO violation, his "claim under § 1962(d) must fail, because there was no violation in which the defendant could have conspired." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *see Edmondson & Gallagher*, 48 F.3d at 1265.

## IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 59, is **GRANTED IN PART** and **DENIED IN PART**. It is further **ORDERED** that Counts

V and VI of the Third Amended Complaint are **DISMISSED** against all Defendants and Counts I, III and IV are **DISMISSED** against Akeel only.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 4, 2026